UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SARTORIUS BIOANALYTICAL INSTRUMENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GATOR BIO, INC., et al., <br><br> Defendants. | Case No.  5:22-cv-01417-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; STAYING CASE** <br><br> Re: ECF Nos. 67, 89 |

Plaintiff Sartorius Bioanalytical Instruments, Inc. brings this action for patent infringement against Defendants Gator Bio, Inc. and Dr. Hong Tan (together, "Gator Bio").  Sartorius alleges that Gator Bio infringed U.S. Patent Nos. 8,305,585 (the "'585 Patent"), 7,394,547 (the "'547 Patent"), 7,445,887 (the "'887 Patent"), and 8,647,588 (the "'588 Patent") (collectively, the "Asserted Patents"), which generally relate to apparatuses and methods for detecting biomolecular interactions.  Second Am. Compl., ECF No. 56 ("SAC").

Before the Court are two related motions.  The first is Gator Bio's motion to dismiss Sartorius's claims of infringement as to the '585, '547, and '887 Patents under Rule 12(b)(6).  MTD, ECF No. 67.  The second is Gator Bio's motion to stay this case after the Court rules on Gator Bio's motion to dismiss pending resolution of an *ex parte* reexamination (EPR) of the '588 Patent.  Stay Mot., ECF No. 89.  The Court has reviewed the parties' papers and heard oral argument on Gator Bio's motion to dismiss on May 1, 2025.  MTD Opp., ECF No. 71; MTD Reply, ECF No. 72; Stay Opp., ECF No. 90; Stay Reply, ECF No. 91; ECF No. 84.  The Court finds Gator Bio's motion to stay suitable for decision without oral argument pursuant to Local Rule 7-1(b).  After careful consideration, the Court **GRANTS IN PART** and **DENIES IN PART**

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
1

Gator Bio's motion to dismiss.  Additionally, the Court **GRANTS** Gator Bio's motion to stay.

## I.    BACKGROUND

### A.    Factual Background

This is a case about biolayer interferometry ("BLI"), an optical technique for analyzing the interaction between two different types of biological molecules.  SAC ¶ 16.  BLI, as relevant here, involves directing a beam of white light through an optical fiber and into a film comprised of two reflecting surfaces located at the tip of fiber.  *See id.*  The distal reflecting surface is coated with a layer of immobilized ligand, or molecules intended to interact with the substance of interest (analyte).  *Id.*  When the beam of light reaches the film, it generates two partially reflected light beams: one when striking the proximal reflecting surface, and another when striking the distal surface.  *Id.*  The two reflected beams interfere with one another, creating an interference pattern that a detector can measure to ascertain the film's optical thickness.  When the film is positioned to interact with the analyte, analyte molecules bind to ligand molecules on the distal reflecting surface, increasing the film's optical thickness and resulting in measurable changes to the interference pattern.

Sartorius alleges that in 2001, Dr. Hong Tan founded and served as an officer of FortéBio, Inc., where he helped develop BLI technology, including a line of products named Octet.  *Id.* ¶ 17.  Dr. Tan left FortéBio in 2008, and the company was later acquired.  *Id.* ¶¶ 17–18.  In 2020, Sartorius acquired the company that held what was once FortéBio and continued to sell the Octet line of BLI products.  *Id.* ¶ 18.

After leaving FortéBio, Dr. Tan formed and began working at what is now Gator Bio, Inc.  *Id.* ¶¶ 19–24.  Gator Bio, Inc. sells the Gator Bioanalysis System line of BLI devices (the "Accused Products") that allegedly infringe the Asserted Patents.  *Id.* ¶¶ 49–56.  The Accused Products include the GatorPrime and GatorPlus instruments, as well as consumable Gator Biosensor Probes that are designed for use with such instruments.  *Id.*

### B.    Procedural Background

Sartorius initiated this action in March 2022, alleging that Gator Bio's Accused Products

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
2

infringe four patents, including the '585, '547, and '887 Patents.[1]  After Gator Bio moved to dismiss, Sartorius filed an amended complaint, which Gator Bio also moved to dismiss.  ECF Nos. 20, 28, 29.  Before it ruled on Gator Bio's motion, the Court stayed this action pending resolution of a related ITC action (No. 337-TA-1344).  ECF No. 38.

In the ITC action, Sartorius initially asserted the same four patents it asserted here, and the parties conducted discovery regarding the same.  Sartorius later terminated the investigation as to all patents and claims except claim 8 of the '887 Patent.  ECF No. 52-2 at 3.  Meanwhile, Gator Bio filed a petition for *inter partes* review (IPR) challenging all claims of the '585 Patent (IPR2023-00215) (the "'585 IPR").  The PTAB denied institution of the '585 IPR on June 20, 2023.  ECF No. 68-5.  After an evidentiary hearing in the ITC action, the ALJ issued a Final Initial Determination of noninfringement.  ECF No. 52-1.  The Commission affirmed the ALJ's determination with modifications on July 16, 2024, and Sartorius elected not to appeal.  ECF No. 52-2.

On February 12, 2025, the Court lifted the stay on this case at the parties' request.  ECF No. 55.  Shortly thereafter, Sartorius filed the operative Second Amended Complaint, which reasserts Sartorius's claims for direct, indirect, and willful infringement of the '585, '547, and '887 Patents, and adds new claims based on the newly-asserted '588 Patent.  SAC ¶¶ 3, 58 (asserting claim 21 of the '547 Patent), 104 (asserting claim 1 of the '887 Patent), 131 (asserting claim 1 of the '585 Patent), 152 (asserting claim 1 of the '588 Patent).  One month later, Gator Bio filed the instant motion to dismiss.

In parallel, Gator Bio filed another petition for IPR, this time challenging all claims of the '588 Patent (IPR2025-00633).  ECF No. 79.  The PTAB denied Gator Bio's petition on discretionary grounds without reaching the petition's merits.  ECF No. 87.  A few weeks later, on August 13, 2025, Gator Bio filed a request for EPR of the '588 Patent based on the same grounds.  ECF No. 89-1.  The PTO granted the request and ordered reexamination of the '588 Patent on

---

[1] Sartorius also asserted U.S. Patent No. 7,728,982 in its original complaint but has since withdrawn all claims based on that patent.  ECF No. 57 at 3.

United States District Court
Northern District of California

September 9, 2025. *Id.* at 2.

On September 30, 2025, Gator Bio filed the instant motion to stay the case. Gator Bio requests that the Court proceed to rule on its motion to dismiss, then stay the remaining claims in this case pending resolution of the EPR of the '588 Patent.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

To survive Gator Bio's Rule 12(b)(6) motion, the SAC must allege sufficient facts from which the Court can reasonably infer that Gator Bio is liable for the alleged patent infringement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pled allegations in the complaint as true, but unsupported legal conclusions are not afforded the same treatment. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As such, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient to state a plausible claim for relief. *Id.*

Likewise, in the patent context, a plaintiff does not assert a plausible claim for infringement by merely reciting the elements of patent claims and concluding that the accused product practices those elements. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). "A plaintiff is not required to plead infringement on an element-by-element basis," but the claim must be supported by factual allegations that, when taken as true, give rise to a plausible inference of infringement beyond the speculative level. *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

### B.    Motion to Stay

Courts have inherent power to manage their dockets, "including the discretion to grant a stay pending concurrent proceedings before the PTO." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 2015 WL 1006582, at *1 (N.D. Cal. Mar. 6, 2015) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). In determining whether to stay a patent infringement case pending reexamination of the patents-in-suit, courts in this District consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the

United States District Court
Northern District of California

issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *PersonalWeb, LLC v. Apple, Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014) (citations and quotations omitted). Courts recognize "a liberal policy in favor of granting motions to stay proceedings" pending the resolution of PTO proceedings, like EPR. *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 956 (N.D. Cal. 2019); *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011) (citing *ASCII Corp. v. STD Entm't USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)). However, the moving party still bears the burden of demonstrating that a stay is appropriate, and courts must evaluate stay requests on a case-by-case basis. *Zomm*, 391 F. Supp. 3d at 956.

## III.    MOTION TO DISMISS

Gator Bio moves to dismiss Sartorius's claims of direct, indirect, and willful infringement as to the '585, '547, and '887 Patents, but not the '588 Patent. Gator Bio asserts various arguments in support of dismissal, which the Court takes in turn.

### A.    Direct Infringement

#### 1.    '585 Patent – Prosecution Disclaimer

Gator Bio argues that the doctrine of prosecution disclaimer forecloses infringement of asserted claim 1 of the '585 Patent as a matter of law. According to Gator Bio, Sartorius disavowed any position that the '585 Patent covers a so-called "fiber-in-fiber-out" design when opposing institution of the '585 IPR but accuses Gator Bio's products of infringement for practicing the same design.[2] Gator Bio asks the Court to hold Sartorius to its disclaimer and find that the Accused Products do not infringe.

---

[2] To support its prosecution disclaimer argument, Gator Bio requests that the Court take judicial notice of the records in the '585 IPR and ITC action, portions of which Gator Bio filed as exhibits to its motion. Exs. 1-7, ECF Nos. 68-1–68-7. Sartorius did not object. Courts regularly take judicial notice of public records of proceedings before other courts and administrative agencies, including the PTAB and ITC. *See, e.g.*, *Seoul Semiconductor Co. v. Finelite, Inc.*, No. 22-CV-02869, 2023 WL 7106480, at *2 (N.D. Cal. Jan. 27, 2023); *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1111 (N.D. Cal. 2024). As such, the Court GRANTS Gator Bio's request and takes judicial notice of the exhibits.

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
5

The doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). In other words, when a patentee argues for a circumscribed interpretation of a claim in order to obtain a patent, this representation "narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). The doctrine nominally applies only to pre-issuance prosecution, but the Federal Circuit has extended its scope to encompass patentees' representations made "during an IPR proceeding, whether before or after an institution decision." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017). However, not all statements made during IPR will narrow the scope of a claim. For prosecution disclaimer to attach, the alleged disavowing statements "must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013) (citations omitted).

Here, asserted claim 1 of the '585 Patent requires "an optical element removably attached to the tip of [an] optical fiber." SAC, Ex. C at 17, ECF No. 59-3 ('585 Patent at 15:18-19). During the '585 IPR proceedings, Gator Bio argued that this claim is invalid as obvious over the Sun prior art reference. Gator Bio read Sun as disclosing a BLI setup in which a probe (the "optical element") is removably attached to the tip of a Y-shaped optical fiber using a connector, the same configuration in claim 1 of the '585 Patent.

In opposing institution, Sartorius argued that the probe in Sun was not itself an optical element. Rather, Sun's probe was an extension of the Y-shaped optical fiber with a fixed optical element at its distal end or tip. Sartorius further asserted that the "connector" in Sun was merely an "intermediate break" in the optical fiber—what Gator Bio calls the "fiber-in-fiber-out"

design—as shown in the following diagram:



Figure 3 Detecting system structure

MTD at 17 (Figure 3 in the Sun reference, ECF No. 68-6 at 4, with Gator Bio's annotations). Sartorius argued that Sun therefore disclosed an "*unclaimed* embodiment" represented in Figure 2 of the '585 Patent (reproduced below, left) because the "optical element" in Sun was fixed to the tip of the optical fiber. ECF No. 68-4 at 22.



MTD at 17 ('585 Patent at Figs. 2, 4, with Gator Bio's annotations).

Returning to the instant motion, Gator Bio contends that the Accused Products embody the same fiber-in-fiber-out design that Sartorius disclaimed during the '585 IPR, so there can be no infringement as a matter of law. Sartorius counters that it did not make any disclaimer—let alone a "clear and unmistakable" one—of a fiber-in-fiber-out arrangement because its IPR arguments were limited to the "removably attached" limitation of the '585 Patent. Moreover, Sartorius argues that its infringement theory here does not rely on a fiber-in-fiber-out design. Sartorius alleges that the Accused Products consist of an optical fiber running into a sensor housing and removably coupling with a Gator Bio probe. SAC ¶ 64, Fig. 8. Sartorius further alleges that,

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
7

unlike Sun, the entirety of the Gator Bio probe is an optical element. *Id.* ¶ 134 & Fig. 7. As such, the optical element is removably attached to the optical fiber and not merely a continuation of the optical fiber. In any case, Sartorius contends that Gator Bio's arguments are better adjudicated after claim construction and discovery and not on a 12(b)(6) motion, because the relevant pleading standard only requires Sartorius to "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)); *Nalco*, 883 F.3d at 1350.

As a threshold matter, the Court is not persuaded that it is improper to address prosecution disclaimer at the pleading stage. There is no categorical rule against claim construction when adjudicating a motion to dismiss. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024). Indeed, some claim construction is appropriate on a Rule 12(b)(6) motion where, as here, the claim at issue can be construed using only intrinsic evidence. *Id.* ("Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6).").

Applying the doctrine here, the Court finds that Sartorius clearly and unmistakably disclaimed a BLI configuration in which the optical element is adhered directly to the tip of the optical fiber. This includes arrangements where, as in Sun, a connector constitutes an "intermediate break" between two pieces of optical fiber. In its decision denying institution, the PTAB recognized that Sartorius "unambiguously admit[ted]" that the '585 Patent does not cover such an arrangement. *See* ECF No. 68-5 at 5. Sartorius takes issue with Gator Bio's characterization of this disclaimer as one of "fiber-in-fiber-out" designs, but the fact remains that Sartorius disclaimed embodiments in which the optical element is adhered directly to the optical fiber.

The parties' remaining dispute appears to center around how to identify parts of the Gator Bio probe. According to Gator Bio, its probes consist of a short segment of optical fiber that is

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY

8

coated on its distal end with an unremovable optical element. This arrangement is identical to what Sartorius disclaimed as an unclaimed embodiment during IPR. Sartorius, on the other hand, alleges that there is no optical fiber in Gator Bio's probe because the entire probe is an optical element. On a motion to dismiss, the Court must take Sartorius's factual allegations as true. The Court cannot decide the actual composition of Gator Bio's probe at this early stage.

That being said, Sartorius's infringement theory still runs into a bigger issue. Sartorius's theory that Gator Bio's probe is an optical element with no optical fiber plainly contradicts judicially noticed material and, more importantly, other allegations in the SAC. At the ITC hearing, Sartorius's expert Dr. Ryan Bailey testified that in the Accused Products, "fiber bundles are inserted into . . . the mechanical coupling," and "coming out of the mechanical coupling . . . are the Gator *fiber* probes." Mot., Ex. 1 at 10–11, ECF No. 68-1 (ITC Evidentiary Hrg. Tr. at 666:16–667:2) (emphasis added). This suggests that Gator Bio probes do, in fact, comprise optical fiber and not just an optical element.

Indeed, Sartorius alleges as much elsewhere in the SAC. In the context of the '588 Patent, Sartorius alleges that Gator Bio's probe is an "optical sensing assembly" that has "a transparent optical element having end faces and first and second reflecting surfaces formed on the end faces" at the tip of the probe. *Id.* ¶ 154. This allegation is at odds with Sartorius's theory that Gator Bio's probe is entirely an "optical element" and instead suggests that the Accused Products practice an arrangement like the one in Sun, which Sartorius disavowed as an unclaimed embodiment. Thus, Sartorius's own allegations undermine and render implausible its claim that the Accused Products infringe claim 1 of the '585 Patent. *See Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim.").

For that reason, the Court GRANTS Gator Bio's motion to dismiss the claim for direct infringement as to the '585 Patent. Sartorius's self-contradictory infringement position leaves the Court doubtful that Sartorius could successfully amend its claim to state a plausible claim for direct infringement of the '585 Patent, especially given that Sartorius has had two opportunities to

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
9

amend. However, out of an abundance of caution, the Court grants Sartorius leave to amend one more time.

### 2.    '547 Patent and '887 Patent – Prosecution Disclaimer

Next, Gator Bio contends that Sartorius's disclaimer at the '585 IPR also precludes infringement of the '547 and '887 Patents. Gator Bio argues that Sartorius's disclaimer based on the "removably attached" limitation in claim 1 of the '585 Patent applies with equal force to the "mechanical coupling" limitation in asserted claim 21 of the '547 Patent (via independent claim 1) and asserted claim 1 of the '887 Patent. Gator Bio acknowledges that the ALJ in the ITC action found the "removably attached" and "mechanical coupling" limitations to be distinguishable and that any disclaimer concerning the former limitation does not attach to the latter (ECF No. 52-1 at 51–57) but asks this Court to find differently. As explained below, the Court declines to do so.

The asserted claims in the '547 and '887 Patents require "a mechanical coupling that engages [an] optical element with [a] fiber." SAC, Ex. A at 17, ECF No. 59-1 ('547 Patent at 15:13-14); SAC, Ex. B at 21, ECF No. 59-2 ('887 Patent at 9:65-66). Though not asserted in this case, claims 13 and 18 of the '585 Patent also recite "a mechanical coupling that engages [an] optical element with [a] fiber." '585 Patent at 16:23-25, 16:36-38.

Gator Bio contends that the '585 and '547 Patents issued from the same family and share a common specification that is incorporated by reference into the '887 Patent, so the '585 IPR can inform construction of the '547 and '887 Patents' claims. *See Malvern Panalytical Inc. v. TA Instruments-Waters LLC*, 85 F.4th 1365, 1375 (Fed. Cir. 2023). Gator Bio then points to the following argument Sartorius made when opposing institution of the '585 IPR:

> Because **claims 1, 13, and 18 all unambiguously require a coupling between an optical fiber and an optical element**, [Gator Bio] is forced to contend that the portion of optical fiber running out the distal end of the SMA connector is, in fact, no longer optical fiber, but is instead the claimed "optical element" to which the optical fiber is coupled. This makes little sense; applicants understood the difference between the various optical components in their assembly, and the unique terms that identified them.

ECF No. 68-4 at 17 (emphasis added). Gator Bio asserts that, by specifically referencing the "mechanical coupling" limitation in claims 13 and 18 of the '585 Patent and equating it to the

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
10

"removably attached" limitation in claim 1 of the same patent, Sartorius's disclaimer applies to both the "removably attached" limitation and the "mechanical coupling" limitation in all the Asserted Patents.

In the ITC action, the ALJ rejected this argument and found no disclaimer as to the '887 Patent, reasoning that the "primary focus" of the '585 IPR was on the "removably attached" limitation. ECF No. 52-1 at 51. Gator Bio argues here that the focus of the '585 IPR is irrelevant, because the scope of what a patentee surrenders "is not limited to what is absolutely necessary to avoid a prior art reference." *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358–59 (Fed. Cir. 2017). Instead, "patentees may surrender more than necessary," and "[w]hen this happens, [courts] hold patentees to the actual arguments made." *Id.* at 1359. Gator Bio asks this Court to hold Sartorius to its disclaimer of the "mechanical coupling" limitation.

The Court accepts that any disclaimer at the '585 IPR can inform the scope of the '547 and '887 Patents' claims and that Sartorius must be held to any disavowing arguments it made during that proceeding. However, the Court is not persuaded that Sartorius's disclaimer concerning the "removably attached" limitation extends to the "mechanically coupled" limitation for two reasons. First, it is not clear that the '585 Patent's claims can inform the scope of the '547 and '887 Patents' claims. The ALJ's decision in the ITC action is instructive on this issue. There, the ALJ reasoned that claim 8 of the '887 Patent does not correspond to claims 13 and 18 of the '585 Patent, despite their similar language, because the former is not subject to the same removability requirement as the latter. Claims 13 and 18 of the '585 Patent both depend on claim 1, which recites the "removably attached" limitation. In contrast, there is no removability requirement in claim 8 of the '887 Patent. Likewise, there is no removability requirement in claim 21 of the '547 Patent nor in claim 1 from which claim 21 depends.

Second, as previously mentioned, disclaimer or disavowal of claim scope at IPR "must be both clear and unmistakable." *3M Innovative Props. Co.*, 725 F.3d at 1325. The lone statement Gator Bio relies upon to extend Sartorius's disclaimer is neither, notwithstanding Sartorius's use of the word "unambiguously." From what the Court can discern, Sartorius had no need to

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
11

United States District Court
Northern District of California

reference the "mechanical coupling" limitation of claims 13 and 18, because its arguments at the '585 IPR primarily concerned the "removably attached" limitation. Why Sartorius chose to do so is unclear at best, and it is this lack of clarity that makes extending prosecution disclaimer to the '547 and '887 Patents inappropriate. Accordingly, the Court finds that Sartorius's prosecution disclaimer does not preclude infringement of the '547 Patent or '887 Patent.

### 3.     '887 Patent – Failure to Allege Claim Limitation

Gator Bio also contends that Sartorius's direct infringement claim as to the '887 Patent should be dismissed for the separate reason that Sartorius fails to plausibly allege that Gator Bio's probes practice certain claim limitations. Asserted claim 1 of the '887 Patent requires an "optical element including . . . a layer of enzyme substrate molecules," and "exposing the optical element to an enzyme." SAC, Ex. B at 17, ECF No. 59-2 ('887 Patent at 9:67–10:9). Gator Bio argues that Sartorius has not plausibly alleged that the Accused Products practice these limitations.

In the SAC, Sartorius alleges "[u]pon information and belief" that the accused probes meet these limitations. SAC ¶¶ 116, 118. Without more, these allegations are insufficient to state a plausible claim for infringement because they simply recite the claim requirements and conclude that the Accused Products practice them. *Bot M8*, 4 F.4th at 1353. Perhaps recognizing this, Sartorius argues that the SAC provides the factual basis for these otherwise conclusory allegations through citations to pages of Gator Bio's website and a screenshot of a Gator Bio video. Neither are availing.

In footnote 17 to paragraph 116 of the SAC, Sartorius cites pages of Gator Bio's website that reference "small molecules, antibody, and protein (SMAP) Probes" and "a layer of immobilized biomolecules on the surface chemistry of the biosensor." SAC ¶ 116 n.17. Without further explanation, Sartorius claims that these webpages support its allegation that the Accused Products practice "a layer of enzyme substrate molecules" that interacts with enzymes. Not so. The cited materials do not mention any enzyme or substrate, let alone suggest that Gator Bio's probes comprise a layer of enzyme substrate molecules. At most, they suggest that Gator Bio's probes have the capability to bind a wide variety of different molecules, which may or may not

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY

United States District Court
Northern District of California

include enzyme substrate. Without any allegation of instances in which Gator Bio actually used its probes to perform the claim limitation, Sartorius's claim for direct infringement remains in the realm of speculation and fails to reach plausibility. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform a particular claim element . . . it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement."); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (holding that the patentee must show actual infringement, rather than just the capability to infringe).

In paragraph 118 of the SAC, Sartorius reproduces a screenshot of a Gator Bio webinar video displaying a diagram of an unidentified probe with labels purportedly identifying a layer of enzyme substrate molecules on an optical element. *Id.* ¶ 118 Fig. 6; *see also id.*, Ex. F at 10–11, ECF No. 59-6 (claim chart with the same diagram). Sartorius argues that this screenshot shows the Accused Products practicing the elements of the asserted claims, particularly "exposing the optical element to an enzyme." Again, not so. As Gator Bio points out, it was Sartorius, not Gator Bio, that annotated the diagram to match up with the asserted claim language. The original video from which Sartorius pulled the diagram nowhere mentions enzymes or enzyme substrate. *Compare* ECF No. 68-7 at 2 (screenshot of original video without Sartorius's labels), *with* SAC ¶ 118, Fig. 6. Sartorius's corporate witnesses admitted as much at the ITC evidentiary hearing. ECF No. 68-1 at 175:19-21. The annotated diagram therefore lends little to no support to Sartorius's direct infringement claim. And without such factual support, the SAC is left with only the conclusory allegation that Gator Bio infringes claim 1 of the '887 Patent. That is insufficient to state a claim for relief.

Still, Sartorius asserts that Gator Bio's criticism of the annotated diagram is immaterial because the diagram at least puts Gator Bio on notice of its theory of infringement. That argument misconstrues the relevant pleading standard. Under the operative *Iqbal*/*Twombly* plausibility standard, it is not enough to just match up the language of the asserted claim with the Accused Products and conclude that the products infringe. That is, simply labeling a diagram of an accused

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
13

probe with language from the asserted claim does not make an infringement theory plausible. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353. Sartorius's self-serving annotations do not lend plausibility to its infringement claim.

Lastly, Sartorius argues that Gator Bio's arguments are premature because they ask the Court to construe claim language, limit Sartorius to a preferred embodiment, or make factual determinations as to whether the Accused Products meet the limitations of asserted claim 1. The Court disagrees. As addressed above, the Gator Bio attacks the sufficiency of Sartorius's pleading and argues that the allegations are insufficient to make infringement plausible. Gator Bio's arguments as to the '887 Patent do not require claim construction or factual determinations.

\* \* \*

In sum, the Court finds that Sartorius fails to plead a claim for direct infringement of the '585 and '887 Patents. Sartorius asserts allegations that contradict infringement of the '585 Patent and fails to plausibly allege that the Accused Products practice key claim limitations of the '887 Patent. Though Sartorius disclaimed some of the scope of the '585 Patent at IPR, that disclaimer does not extend to or preclude infringement of the '547 Patent. The Court therefore GRANTS Gator Bio's motion to dismiss Sartorius's direct infringement claim for the '585 and '887 Patents and DENIES the motion as to the '547 Patent.

### B.     Indirect Infringement

Gator Bio argues that Sartorius also fails to state a plausible claim for indirect infringement of the '585, '887, and '547 Patents, whether by inducement under 35 U.S.C. §§ 271(b) or (f)(1), or by contributory infringement under §§ 271(c) or (f)(2). Gator Bio argues that Sartorius's indirect infringement claims fail for several reasons. First, Sartorius has not pled an underlying product or process that directly infringes (or, in the context of § 271(f), a combination that would directly infringe if it occurred in the United States). Second, Sartorius does not plausibly allege that Gator Bio had knowledge of the '547 Patent or of infringement. Third, the induced infringement claims under § 271(b) and (f)(1) fail because the SAC does not plausibly allege that Gator Bio had the

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
14

United States District Court
Northern District of California

requisite specific intent to cause infringement.  And fourth, the induced infringement claims under § 271(f)(1) fail for the additional reason that Sartorius's allegations are based on the supply of a single component of the claimed invention.  The Court takes each argument in turn and ultimately finds that Sartorius has not adequately pled its indirect infringement claims.

### 1. Indirect Infringement (§§ 271(b), (c), (f)) – Underlying Direct Infringement

As an initial matter, a claim for indirect infringement must be predicated on an underlying direct infringement, or in the case of § 271(f), a combination that would directly infringe if it "occurred within the United States."  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" (citation omitted)); *see also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1143 (N.D. Cal. 2019) (dismissing indirect infringement claims for failure to adequately plead direct infringement).  Sartorius does not dispute this.  The Court found that Sartorius failed to plausibly allege direct infringement of the '585 and '887 Patents, so its indirect infringement claims as to those patents necessarily fail as well.  Thus, the Court limits its consideration of Gator Bio's other indirect infringement arguments to the '547 Patent.

### 2. Indirect Infringement (§§ 271(b), (c), (f)) – Knowledge

Induced and contributory infringement under §§ 271(b) and (c) "require[] knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  Sections 271(f)(1) and (f)(2) mirror the induced and contributory infringement provisions under §§ 271(b) and (c), respectively, but address the supply of components that are combined outside of the United States "in a manner that would infringe the patent if such combination occurred within the United States."  35 U.S.C §§ 271(f)(1), (f)(2).  Like their counterparts, sections 271(f)(1) and (f)(2) require knowledge of the asserted patent and of infringement.  *See TriDiNetworks Ltd. v. NXP-USA, Inc.*, No. 19-CV-1062, 2020 WL 2514086, at *2–3 n.3–4 (D. Del. May 15, 2020); *Universal City Studios v. Nissim Corp.*, No. 14-CV-81344,

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY

United States District Court
Northern District of California

2015 WL 1124704, at *3–5 (S.D. Fla. Mar. 12, 2015).

Gator Bio argues that Sartorius did not provide any pre-suit notice of the '547 Patent or of any infringement of that patent. Sartorius concedes that it did not provide pre-suit notice but counters that Gator Bio still had knowledge of the '547 Patent. According to Sartorius, Dr. Tan knew of the '547 Patent as of the date of its issuance (July 1, 2008) because he founded and served as an officer of FortéBio—the predecessor company of Sartorius that filed and obtained the '547 Patent—until August 2008. SAC ¶¶ 17–18, 30; MTD Opp. at 20–22 (citing a separation agreement Dr. Tan signed on August 27, 2008). Dr. Tan is also a named inventor on the '547 Patent and submitted documents to the PTO during the patent's prosecution. *Id.* ¶ 26, 30.

Taking the SAC's factual allegations as true and drawing reasonable inferences in Sartorius's favor, the Court finds that Sartorius has sufficiently pled that Gator Bio had knowledge of the '547 Patent. Gator Bio argues that Dr. Tan's awareness of the patent application that issued as the '547 Patent is insufficient to infer knowledge of the patent itself, citing the general rule in this District that knowledge of a pending patent application alone is insufficient to meet the knowledge requirement for induced infringement. *E.g.*, *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018). But as Gator Bio itself acknowledges, the '547 Patent issued in July 2008, before Dr. Tan departed from FortéBio. SAC, Ex. A at 2, ECF No. 59-1 ('547 Patent). As such, the general rule concerning pending patent applications is inapposite.

Sartorius's allegations regarding Gator Bio's knowledge of infringement, on the other hand, are lacking. Sartorius claims that Gator Bio had knowledge of the underlying infringement because after leaving FortéBio, Dr. Tan founded Gator Bio, which developed and sold the Accused Products with BLI technology covered by the Asserted Patents. *See id.* ¶ 17, 49–56. According to Sartorius, Gator Bio knew of the '547 Patent and how BLI instruments function from Dr. Tan's tenure at FortéBio, so Gator Bio must have known that the Accused Products would infringe.

The Court is unconvinced. Sartorius's argument appears to be premised on the assumption that the '547 Patent covers all applications of BLI. The logical consequence of this assumption is

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
16

United States District Court
Northern District of California

that Dr. Tan must have known he would be infringing the '547 Patent by continuing to work on BLI technology after leaving FortéBio. Yet, Sartorius does not (and likely cannot) plausibly allege facts to substantiate this assumption. Indeed, the '547 Patent itself recognizes other prior art BLI applications. '547 Patent at 1:51-63. The Court cannot reasonably infer from Dr. Tan's decision to continue producing BLI instruments at Gator Bio, Inc. that he knew the Accused Products would infringe.

Accordingly, Sartorius does not sufficiently allege that Gator Bio knew the Accused Products infringed the '547 Patent and has therefore not stated a claim for indirect infringement as to that patent.

### 3.    Induced Infringement (§§ 271(b), (f)(1)) – Specific Intent

Gator Bio argues that Sartorius's induced infringement claims also fail because Sartorius does not plausibly allege that Gator Bio had the requisite specific intent to cause the alleged infringement. "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Nalco*, 883 F.3d at 1355 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). This specific intent requirement applies to claims under both § 271(b) and § (f)(1). *See Uniloc USA, Inc. v. Logitech, Inc.*, No. 18-CV-01304, 2018 WL 6025597, at *2-3 (N.D. Cal. Nov. 17, 2018) (dismissing induced infringement claim under § 271(b) for failure to allege specific intent); *Universal City*, 2015 WL 1124704, at *3-5 (same for claim under § 271(f)(1)). Gator Bio contends that Sartorius' allegations as to specific intent are insufficient because Sartorius merely alleges that "Defendants have induced and continue to induce others to directly infringe . . . by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to directly infringe." SAC ¶ 92. This allegation is a formulaic recitation of the elements of the claim and by itself insufficient to state a claim. *Twombly*, 550 U.S. at 555.

Sartorius, on the other hand, argues that Gator Bio specifically intended its customers to infringe by offering the Accused Products for sale on its website and telling customers to use the

United States District Court
Northern District of California

products to perform an infringing method. *See* SAC ¶¶ 86–89. Sartorius cites several Gator Bio materials that purportedly show Gator Bio teaching and encouraging customers to use the Accused Products to infringe. *See, e.g.*, SAC ¶¶ 55 n.4, 60 n.5, 61 n.6, 62 n.7, 69 n.8. To be sure, "[e]vidence of active steps taken to encourage direct infringement," such as "recommend[ing]," encourage[ing]," or "promot[ing]" an infringing use can be sufficient to establish specific intent to induce infringement. *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015). Here, however, the Court cannot reasonably make such an inference from the SAC. The Gator Bio materials Sartorius cites do seem to recommend, encourage, and promote use of the Accused Products generally, but it is not at all apparent that the materials specifically teach an infringing use of the products. Nor does Sartorius explain where in the cited materials Gator Bio supposedly does so. As such, Sartorius has not sufficiently alleged that Gator Bio specifically intended to induce infringement of the '547 Patent.

### 4. Induced Infringement (§ 271(f)(1))– Supply of a Single Component

Gator Bio also contends that Sartorius's invocation of 35 U.S.C. § 271(f)(1) is improper. In the SAC, Sartorius alleges that Gator Bio infringed the '547 Patent "by supplying in or from the United States the Gator Biosensor Probes." SAC ¶ 96. Gator Bio argues that this conduct cannot form the basis of a § 271(f)(1) claim, because in *Life Techs. Corp. v. Promega Corp.*, the United States Supreme Court clarified that "the supply of a single component of a multicomponent invention" is not an infringing act under that section. 580 U.S. 140, 145 (2017). Sartorius does not respond to this argument in its opposition brief, so the Court considers this issue conceded. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases).

\*       \*       \*

Ultimately, the Court finds that Sartorius's claims of indirect infringement as to the '585, '887, and '547 Patents are insufficiently pled. The causes of action as to the '585 and '887 Patents lack a predicate direct infringement claim. And as for the '547 Patent, Sartorius fails to allege that Gator Bio had knowledge of infringement or specifically intended for its customers to infringe.

As such, the Court GRANTS Gator Bio's motion to dismiss the indirect infringement claims.

### C.    Willful Infringement and Enhanced Damages

Finally, Gator Bio argues that Sartorius fails to state a claim for willful infringement and entitlement to enhanced damages under 35 U.S.C. § 284.  Willfulness is a factor in the Court's determination of whether to award enhanced damages under section 284.  *See Google LLC v. Princeps Interface Techs. LLC*, No. 19-CV-06566, 2020 WL 1478352, at *2 (N.D. Cal. Mar. 26, 2020).  "Section 284 allows district courts to punish the full range of culpable behavior," but awards of enhanced damages under the statute are generally reserved for "egregious cases typified by willful misconduct."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016).  In other words, enhanced damages are meant to punish behavior that "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id.* at 103–04.  As with induced infringement, a finding of direct infringement is a prerequisite for a willful infringement claim.  *AlterG*, 388 F. Supp. 3d at 1143.  Courts in this District also require plausible allegations of pre-suit knowledge of the asserted patents and of infringement as prerequisites for enhanced damages.  *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020) (collecting cases).[3]

For the reasons discussed above, Sartorius has not sufficiently pled direct infringement of the '585 and '887 Patents or that Gator Bio knew of the alleged infringement of the '547 Patent.  Without these prerequisites being met, Sartorius's willful infringement claim fails.  Even if Sartorius had met these requirements, the SAC's allegations as to willfulness and egregious conduct are plainly deficient.  Sartorius alleges that "Defendants' infringement . . .  has been, and continues to be, deliberate, willful, and knowing, thus entitling Plaintiff to treble damages under

---

[3] Sartorius also attempts to save its willful infringement claim by arguing that Gator Bio now has knowledge of the Asserted Patents because of Sartorius's original filing of this action in March 2022.  Opp. at 27.  However, the Court squarely rejected this same argument in a prior case, finding that willfulness "must necessarily be grounded exclusively in the accused infringer's *pre-filing* conduct."  *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2018 WL 4510737, at *3 (N.D. Cal. Sept. 18, 2018).  Sartorius's citation to *IOENGINE, LLC v. PayPal Holdings, Inc.*, a case from the District of Delaware, does not persuade the Court otherwise.  No. CV 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019)

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
19

35 U.S.C. § 284." SAC ¶¶ 101, 128, 149. As the Court has previously stated, such legal conclusions unsupported by factual allegations are insufficient to state a claim. *Twombly*, 550 U.S. at 555. Sartorius's attempt to salvage its willfulness claim by reiterating that Dr. Tan is a co-inventor of the Asserted Patents falls flat. That fact alone does not give rise to a plausible inference that Dr. Tan willfully infringed the Asserted Patents. Accordingly, the Court GRANTS dismissal of Sartorius's claim for willful infringement and enhanced damages.

## IV.    MOTION TO STAY

Having found that only Sartorius's claim for direct infringement as to the '547 Patent survives dismissal, the Court proceeds to address Gator Bio's motion to stay the case. Gator Bio seeks to stay this action pending EPR of the '588 Patent. As noted above, courts consider three factors to determine whether to stay a patent infringement case pending reexamination of the asserted patents. For the reasons that follow, the Court finds that the factors weigh in favor of a stay here.

### A.    Stage of the Case

The first factor looks to whether the litigation has progressed significantly enough for a stay to be disfavored. Gator Bio argues that this factor weighs in favor of a stay because "[t]he case is still at the pleading stage, discovery has not begun, and the Court has yet to set a schedule for the case, much less a trial date." *Samsung Elecs. Co. v. Blaze Mobile, Inc.*, No. 5:21-CV-02989, 2023 WL 5418756, at *2 (N.D. Cal. Aug. 22, 2023). But as Sartorius points out, and Gator Bio acknowledges, this case is in a unique procedural posture. The parties already conducted fact and expert discovery in the ITC case as to the '547, '585, and '887 Patents and litigated claim construction issues. Sartorius therefore contends that, despite this case being at the pleading stage, full discovery has already been conducted as to three of the four Asserted Patents and this discovery applies equally to the related '588 Patent.

On balance, the Court finds this factor weighs slightly in favor of a stay. It is undisputed that the parties conducted discovery as to three of the four Asserted Patents and that these patents are related to the '588 Patent, but it is not so clear that these factors obviate the need for fulsome

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY

20

discovery specific to the '588 Patent. The parties have yet to even exchange contentions as to the '588 Patent or conduct discovery on damages issues in this case. Though the parties have a significant head-start from the ITC action, they will still need to engage in lengthy claim construction and dispositive motions before this case is ready for trial. Given that substantial work still lies ahead, a stay at this stage is not disfavored.

### B.    Simplification of the Case

Next, the Court considers whether a stay would simplify the issues in this case. Gator Bio contends that reexamination of the '588 Patent will simplify this case as to all Asserted Patents. All four Asserted Patents are interrelated, are generally directed to the same BLI technology, employ similar claim language, and are asserted against the same Accused Products. Sartorius counters that because the '588 Patent is the only patent-in-suit subject to reexamination, and that EPR (unlike IPR) will have no estoppel effect on Gator Bio, a stay will not simplify the issues in this case.[4] Sartorius further argues that the '588 Patent is not part of the same patent family as the other Asserted Patents, so the results of the reexamination will have little relevance to the other Asserted Patents.

This factor also cuts slightly in favor of a stay. The '588 Patent's not being part of the same family as the other Asserted Patents and the lack of a binding estoppel effect in this litigation significantly diminishes the power of reexamination to simplify the issues in this litigation. However, the outcome of the EPR will still promote resolution of the issues in this case and trial by providing guidance from the PTO. *Evolutionary Intel., LLC v. Facebook, Inc*, No. C 13-4202 SI, 2014 WL 261837, at *2 (N.D. Cal. Jan. 23, 2014) ("[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims

---

[4] Sartorius briefly raises the argument that Gator Bio should be precluded from raising invalidity defenses as to the '588 Patent based on the doctrine of assignor estoppel, because Dr. Tan and Robert Zuk are named inventors on the patent. Stay Opp. at 13 n.4 (citing *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 567 (2021)). However, Sartorius does not develop this argument, address the limitations of the doctrine (*see Minerva*, 594 U.S. at 576–77), or cite authority for denying a stay on this ground. As such, the Court need not resolve the issue of assignor estoppel to reach its conclusion.

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
21

survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." (citation omitted)).  Furthermore, Gator Bio stipulates that if the case is stayed and EPR proceeds to a reexamination certificate, Gator Bio will not raise statutory anticipation or obviousness defenses based on prior art that it could reasonably have raised at EPR.  Reply at 14–15.  Taking Gator Bio at its word, the Court finds that EPR of the '588 Patent will simplify the issues in this case.

### C.      Undue Prejudice

For the third factor, the Court looks to whether a stay would unduly prejudice or present a clear tactical disadvantage to Sartorius.  "This district applies a four sub-factor analysis considering: (i) the timing of the reexamination request; (ii) the timing of the request for stay; (iii) the status of reexamination proceedings; and (iv) the relationship of the parties."  *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738, 2018 WL 6574188, at *6 (N.D. Cal. Dec. 12, 2018) (quotation marks omitted).  For the reasons that follow, the Court finds that the four sub-factors weigh in favor of a stay.

First, Gator Bio sought reexamination of the '588 Patent in a timely manner.  Sartorius notified Gator Bio that the '588 Patent was at issue in December 2024 and first asserted the patent in February 2025 when it filed the SAC.  Gator Bio filed an IPR petition challenging the patent less than a week after Sartorius filed the SAC, then sought EPR of the patent within a few weeks of the PTO's denial of the IPR petition.

Second, Gator Bio timely filed its request for a stay.  The PTO ordered reexamination of the '588 Patent on September 9, 2025, and Gator Bio brought the instant stay motion on September 30, 2025, less than three weeks later.

Third, the EPR of the '588 Patent is well underway.  The PTO ordered reexamination on September 9 and is committed by statute to conducting "reexamination proceedings . . . with special dispatch."  35 U.S.C. § 305.  Delay based on the length of the PTO's review alone do not amount to undue prejudice.  *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 13-CV-01356, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014); *Neodron, Ltd. v. Lenovo Grp., Ltd.*, No. 19-CV-

United States District Court
Northern District of California

05644, 2020 WL 5074308, at *2 (N.D. Cal. Aug. 27, 2020) ("Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay.").

Fourth, the parties' relationship does not weigh heavily against a stay. As Gator Bio notes, the '547 and '585 Patents already expired in November 2024. The '887 Patent expires in July 2026, and the '588 Patent expires in January 2027. Sartorius is thus unlikely to obtain injunctive relief for the alleged infringement and is likely limited to damages for any alleged past infringement, which it could pursue after reexamination. The Court recognizes Sartorius's interest in the timely enforcement of its patent rights but does not find that Sartorius has made a convincing showing of any prejudice beyond the delay inherent in a stay.

At bottom, the Court finds that a stay of this case is warranted.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Gator Bio's motion to dismiss and **GRANTS** its motion to stay the case. All of Sartorius's infringement claims as to the '585 and '887 Patents and its indirect infringement claim as to the '547 Patent are dismissed. The direct infringement claim as to the '547 Patent and Sartorius's claims as to the '588 Patent, which were not subject to Gator Bio's motion, remain. The Court finds that amendment would not be futile and thus grants Sartorius leave to amend all dismissed claims.

Further, the Court **STAYS** this case pending resolution of the EPR of the '588 Patent. The parties are ordered to file a status report by March 19, 2026 apprising the Court of the status of the EPR.

**IT IS SO ORDERED.**

Dated: February 19, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-01417-EJD
ORDER RE MOTIONS TO DISMISS AND STAY
23